IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

MARK KRZYKWA, as an individual,
and on behalf of all others similarly situated,

   Plaintiff,                                                 Case No. 0:12-cv-62058-WPD

   v.

CAMPBELL SOUP COMPANY, a New Jersey
Corporation,

   Defendant.
_____/

**DEFENDANT'S MOTION TO DISMISS SECOND AMENDED COMPLAINT**

     Defendant, Campbell Soup Company ("Campbell"), through its undersigned counsel and pursuant to Fed. R. Civ. P. 12(b)(6), respectfully moves the Court for entry of an order dismissing the Second Amended Complaint of Plaintiff Mark Krzykwa.

                    **I.**     **INTRODUCTION AND SUMMARY OF ARGUMENT**

     Mr. Krzykwa contends the words "100% natural" on the labels of three Campbell's soups are misleading because the products contain corn grown from seeds derived from Genetically Modified Organisms ("GMOs"). GMOs are not "natural," so the argument goes, hence, every Florida consumer who, since September 2009, was similarly duped by the words "100% natural" into buying the same three cans of soup should get a full refund, and the Court should redesign Campbell's labels more to his liking.

     This is Mr. Krzykwa's third try at stating a claim. This time, the Second Amended Complaint ("SAC") alleges facts that contradict his Original Complaint ("OC") and First Amended Complaint ("FAC"). But even aided by factual gymnastics, Mr. Krzykwa fails to state

a claim for three reasons.

First, these claims are preempted.  The Department of Agriculture ("USDA") pre-approved Campbell's "100% natural" statement on the two cans of soup that Plaintiff says (in his OC and FAC) he bought "from a Publix market in Fort Lauderdale, Florida in September 2012."  *See* D.E.1, at ¶ 17 and D.E. 17, at ¶ 15, respectively.  Those labels bear USDA's mark of inspection and, by law, cannot be false or misleading.  Recognizing this, he has changed his story.  After twice alleging that the soups he bought bore labels that were approved by USDA, in the SAC he no longer claims to have bought those two soups.  Instead, he now says he bought three *other* soups in the same line of Campbell's 100% Natural Soups and does not mention the earlier two.  Conveniently, these three varieties do not contain chicken or beef, so they are regulated by the Food and Drug Administration ("FDA") rather than USDA, and therefore, do not bear USDA's mark of inspection.

Mr. Krzykwa's sudden recovery of memory cannot save his claims, which are preempted.  According to allegations in all three complaints, each of these soups shares the same supposedly offending ingredient—corn—under a common label that says "100% natural."  The labels on the soups in the SAC must be treated the same as the labels in the OC and FAC.  Specifically, "100% natural" labels containing corn ingredients were found by USDA to be *not* false or misleading (for the two soups identified in the OC and FAC) and the three soups that Mr. Krzykwa now alleges he purchased should not be treated any differently simply because they are regulated by USDA's sister agency, FDA.  FDA and USDA have developed similar policies that govern the labeling of food products with "natural" claims, and both have determined there is nothing material about bioengineered foods that differs from other foods.  Mr. Krzykwa cannot claim otherwise.

Second, there is primary jurisdiction. FDA has said no "special labeling" is required when bioengineered ingredients are used in foods. Mr. Krzykwa begs to differ. He contends that FDA's expertise regarding biotechnology is irrelevant, and he is entitled to mandate what the labels should say. That is not an option.

Third, because of preemption and compliance with federal law, Plaintiff's Florida Deceptive and Unfair Trade Practice Act ("FDUPTA") allegations fall under the safe harbor provision of Fla. Stat. § 501.212(1). His unjust enrichment claim fails for that reason and also because he has an adequate remedy at law.

The Court should grant Defendant's motion to dismiss, with prejudice.

## II. OVERVIEW OF CLAIMS

Plaintiff's SAC[1] challenges the labeling of three Campbell soups. (SAC, ¶ 3.) He contends that the "100% natural" label statement is misleading because the products allegedly contain corn derived from GMOs. (*Id*.) He claims to have bought three Campbell products: (1) Light Southwestern-Style Vegetable Soup, (2) Tomato Garden Soup, and (3) Vegetable Medley Soup. (*Id*., ¶ 38.) He says he would not have bought them "had he known they were not '100% natural.'" (*Id*., ¶ 39.) He seeks relief under FDUTPA and unjust enrichment and prays for damages, restitution, disgorgement of "ill-gotten" gains, interest, attorneys' fees, costs, and injunctive and declaratory relief. *(Id*., ¶¶ 84-85; Prayer for Relief, p. 24.)

## III. PROCEDURAL HISTORY

This is a lawyer-driven case. Mr. Krzykwa's counsel has fine-tuned the facts and shopped for a forum that he hopes might accommodate his legal theory.

---

[1] The SAC is D.E. 27.

### A.     Strike One – The Original *Krzykwa* Complaint

This is not the first GMO lawsuit against Campbell by Mr. Krzykwa's counsel arising from the same facts.  His counsel started out in the Northern District of California in a case called *Barnes v. Campbell Soup Co.*, 12-cv-05185-JSW (N.D. Cal.).  *Barnes* was filed twelve days before this case.  (*Barnes,* D.E. 1 [filed October 5, 2012].)  But five days after drawing a judge who it appears was not to his liking (*see Barnes,* D.E. 7), counsel filed this case.

*Krzykwa* is a clone of *Barnes*.  Consider the odds:  This line of Campbell soups contains 37 different varieties.  Yet, in the OC, Messrs. Barnes and Krzykwa both claim to have bought the *same two soups*:  (i) Southwest-Style White Chicken Chili and (ii) Healthy Request® Mexican-Style Chicken Tortilla Soup.  (*Cf. Barnes* Compl. ¶ 18 [*Barnes* D.E. 1] *with Krzykwa* Compl., ¶ 17 [*Krzykwa* Compl., D.E. 1].)  In the *Barnes* case, Campbell moved to dismiss; because those two soups contain chicken, their labels have been approved by USDA.  (*See Barnes*, D.E. 12.)  Rather than respond, Mr. Barnes amended.  (*Id.*, D.E. 26.)

Likewise, in Florida, faced with a certain motion to dismiss based on the same two soup purchases, Mr. Krzykwa filed an amended complaint.  (*Krzykwa*, D.E. 9.)

### B.     Strike Two – Mr. Krzykwa's First Amended Complaint

In both cases, the FAC alleges that the named plaintiffs bought the same two *chicken* soups as before.  (*Compare Krzykwa* [D.E. 17] *with Barnes* [D.E. 26].)  Also, both hoped to sue over five other soups—again, the same five for each—that neither said he had bought.  Campbell moved again to dismiss.  (*Krzykwa*, D.E. 18; *Barnes*, D.E. 27.)  Mr. Barnes opposed the motions, but decided to amend once again after Campbell filed its reply brief in the California case.  (*Barnes*, D.E. 32.)  In Florida, Mr. Krzykwa did not oppose and, instead, amended the FAC for a third try.

4

### C.     Strike Three – Mr. Krzykwa's Second Amended Complaint

Mr. Krzykwa has now changed his story.  He says he bought three *other* soups at the Publix market in September 2012 (SAC, ¶ 38); soups that he identified in the FAC (SAC, ¶ 43) but *didn't* allege buying.  This shows Mr. Krzykwa's flip-flop:

| First Amended Complaint | Second Amended Complaint |
| --- | --- |
| 33.  Plaintiff purchased Campbell's 100% Natural Southwest-Style White Chicken Chili and Campbell's 100% Natural Healthy Request Mexican Style Chicken Tortilla soup, from a Publix market in Fort Lauderdale, Florida, in September 2012. | 38. Plaintiff purchased Campbell's 100% Natural Light Southwestern-Style Vegetable Soup, 100% Natural Tomato Garden Soup, and 100% Natural Vegetable Medley Soup, all containing GMO corn, from a Publix supermarket in Fort Lauderdale, Florida, during September of 2012. |

## IV.     ALL OF THE SAC'S CLAIMS ARE PREEMPTED AND DEFECTIVE

### A.     Motion to Dismiss Standard

Although a court should accept well-pled facts as true, *Sinaltrainal v. Coca-Cola Company*, 578 F.3d 1252, 1260 (11th Cir. 2009), it need not accept unreasonable inferences or legal conclusions cast in the form of factual allegations. *See Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009) ("[B]are assertions…amount[ing] to nothing more than a 'formulaic recitation of the elements' of a constitutional discrimination claim" are not entitled to an assumption of truth (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

Because Plaintiff alleges that Campbell engaged in a "scheme to induce members of the public to purchase the Products by means of false, misleading, deceptive and fraudulent representations" (SAC, ¶ 17), the entire Complaint must be pled with particularity. *See D.H.G. Props., LLC v. Ginn Cos., LLC*, No. 3:09-cv-735-J-34JRK, 2010 U.S. Dist. LEXIS 140208, at *23 (M.D. Fla. Sept. 28, 2010) (finding Rule 9(b)'s heightened pleading standard applies to

5

FDUTPA claims sounding in fraud).

### B. Plaintiff's Claims Are All Preempted

In his first two complaints, Mr. Krzykwa was quite clear about exactly which soups he bought, when, and from where. (*See* Compl., ¶ 17 (D.E. 1); FAC, ¶ 33 (D.E. 17).) If his factual inconsistencies reveal anything, it is how his lawyers have struggled to manufacture a claim that they hope will not be preempted.

#### 1. Claims Against Chicken Soups Are Expressly Preempted by the FMIA and PPIA, As Mr. Krzykwa Implicitly Concedes.

Congress enacted the Federal Meat Inspection Act ("FMIA") and the Poultry Products Inspection Act ("PPIA") to prevent the interstate distribution of adulterated and misbranded meat and poultry products. *See Kuenzig v. Kraft Foods Inc.*, No. 8:11-cv-838-T-24 TGW, 2011 WL 4031141, at *7 n.8 (M.D. Fla. Sept. 12, 2011), *aff'd* No. 12-11130, 2013 WL 385524 (11th Cir. Feb. 1, 2013); *see also Meaunrit v. Pinnacle Foods Grp., LLC*, No. C 09-04555 CW, 2010 WL1838715, at *5 (N.D. Cal. May 5, 2010). USDA's Food Safety and Inspection Service ("FSIS") is tasked with inspecting meat and poultry products and approves all product labels before use. *See* 21 U.S.C. §§ 456, 457, 606, 607; 9 C.F.R. §§ 317.4(a), 381.132. Pursuant to the FMIA and PPIA, states are expressly preempted from imposing labeling and other requirements that are in addition to, or different than, those imposed by FSIS. 21 U.S.C. §§ 467(e), 678.

Plaintiff's first two complaints allege that he bought Campbell's chicken-based soups. Campbell's Southwest-Style White Chicken Chili and *Healthy Request*® Mexican-Style Chicken Tortilla Soup are regulated by the PPIA because these two soups contain at least 2% cooked poultry meat. *See* 9 C.F.R. § 381.15. Those soups are regulated by USDA and bear USDA's mark of inspection. (*See* labels, [D.E. 18-1, 18-2].)

USDA is charged, among other things, with making sure that meat and poultry products

are labeled in a manner that is not false or misleading. *See* 21 U.S.C. §§ 602, 451. USDA meets this charge by pre-approving all labels. Although a certain category of labels may be deemed "generically approved" by USDA and need not be formally submitted to USDA for review, USDA requires that all labels bearing special claims, such as "natural," be submitted to the agency prior to use for a determination that the labels meet USDA requirements and are not false or misleading. *See* 9 C.F.R. §§ 314.4(a), 317.5, 381.132(a), 381.133. USDA's approval of a label constitutes a finding that the label complies with that directive. If USDA determines that a label is false or misleading, it will not approve the label and will not allow products bearing the label and the USDA mark of inspection to be sold. *Kuenzig*, 2011 WL 4031141, at *6 ("If the FSIS had determined that the labels were false or misleading, defendants' labels would not have been approved"). In other words, the presence of the USDA mark of inspection is presumptive evidence of compliance with the FMIA and PPIA. *Kuenzig*, 2011 WL 4031141, at *7 n.8. ("The regulations relating to the FMIA and the PPIA are clear that [d]efendants' labels were required to be submitted to the FSIS for approval prior to their use, and given that the labels were, in fact used, the Court will presume that the labels received the FSIS's approval").

That mark of inspection preempts all state law claims alleging that a label is false or misleading. In *Meaunrit v. ConAgra Foods Inc.*, No. C 09-02220 CRB, 2010 WL 2867393, at *5, *7 (N.D. Cal. July 20, 2010), the court dismissed plaintiff's state law claims alleging that ConAgra's frozen chicken pot pies were mislabeled. The court ruled that the claims were preempted by the FMIA and PPIA "[b]ecause the [USDA] pre-approval process includes a determination of whether the labeling is false and misleading, and the gravamen of Plaintiff's attack on the label concerns whether [the heating instructions] are accurate, the plaintiff's state causes of action are preempted by federal law." Mr. Krzykwa's counsel knows all this; he was

7

plaintiff's counsel in *Meaunrit*.

As in *Meaunrit*, so too here; any attempt to challenge USDA's determination that Campbell's chicken soup labels are not false or misleading is preempted by federal law. *See also Riegel v. Medtronic, Inc.*, 552 U.S. 312, 330 (2008) (finding common law design, manufacturing, and labeling defect claims were preempted where product at issue had received FDA's pre-market approval); *Empacadora de Carnes de Fresnillo, S.A. de C.V. v. Curry*, 476 F.3d 326, 333-34 (5th Cir. 2007) ("[t]he need for uniform meat packaging, inspection and labeling regulations is strong, lest meat providers be forced to master various separate operating techniques to abide by conflicting state laws").

Mr. Krzykwa had a choice. Faced with Campbell's motion to dismiss the FAC, he could have defended against Defendant's preemption arguments. He did not. By dropping all claims arising from Campbell's chicken-based soups on which his earlier FAC depended, Mr. Krzykwa has implicitly recognized that his claims are preempted.

### 2. Plaintiff's Claims Against Campbell's Vegetable Soups Are Necessarily Preempted.

Can a Plaintiff who has implicitly conceded his claims are preempted as to two varieties among 37 in a single line of soup products, nevertheless recast his claims against other soups within the same line, where the actionable wrongs (the "100% natural" label statement and the offending ingredient, corn) are otherwise identical to the claims he admits are preempted? The answer is no.[2]

The three soups that do not contain chicken—the ones Mr. Krzykwa suddenly remembers

---

[2] Campbell has attached legible copies of the soup labels, both chicken and vegetable varieties, as Exhibits A - E. The Court may consider these materials because Plaintiff's claims are based on those labels. *See. e.g., Sharma v. Johnston*, No. 10-21560-civ-Lenard, 2010 WL 5579885, at *3 (S.D. Fla. Dec. 13, 2010) (quoting *Pension Benefit Guar. Corp. v. White Consol. Indus. Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)).

buying—are regulated by FDA, rather than USDA.  The labels are governed by the Food, Drug & Cosmetic Act ("FDCA") and Nutrition Labeling and Education Act ("NLEA").  FDA does not require pre-approval of labeling.  Nevertheless, the preemptive effect of the USDA mark of inspection necessarily extends to these products.

<u>First</u>, there is common sense.  Plaintiff's allegations in the OC, FAC, and SAC demonstrate that the only difference between the soups in the 100% Natural line of soups bearing USDA's mark of inspection and the soups in the 100% Natural line of soups without the mark is the presence of chicken.  But that difference is of no consequence here; Plaintiff is not suing over whether the chicken is "100% natural."  He is suing over *corn*.  The same allegedly offensive corn is found in the USDA-regulated soups—which he now concedes are beyond his reach—as in the FDA-regulated soups.  To draw such a distinction is like trying to distinguish two car accidents by saying "That case involved a drunk driver in a red car; this case involves a drunk driver in a blue car."

<u>Second</u>, there is consistency among USDA and FDA's regulations and policies.  Both agencies agree that food derived from genetically engineered ingredients is no different from food derived from traditional farming.  And both agree that "natural" claims are not limited by the presence of GMOs.  Indeed, principles of uniformity are key components of the food regulatory scheme.  *See* 21 U.S.C. §§ 607(c), 457(b) (requiring consistent definitions and standards of identity and requiring inter-agency consultations to ensure consistency).  Moreover, the FDCA, FMIA, PPIA, and their implementing regulations all require that a label be truthful and not misleading in every particular, define "misbranding" and "adulteration" the same, and contain virtually identical requirements for declaring product names, ingredients, and nutrition information.  *Compare* 21 U.S.C. §§ 342-43 *with* §§ 601(m)-(n), 453(g)-(h); *compare* 21 C.F.R.

Part 101 *with* 9 C.F.R. Part 317, 381 Subparts N and Y; *see* S. Rep. No. at 2203 (1967) ("Since essentially the same criteria should be applied in determining wholesomeness and branding, whether before or after inspection, the bill would substitute the terminology used in the Federal Food, Drug, and Cosmetic Act for that currently used in the Meat Inspection Act to describe adulteration and misbranding"). It would defy the statutory schemes to treat Campbell's "natural" claims on the labels of its 100% Natural Soup line differently. *See Jones v. Rath Packing Co.*, 430 U.S. 519 at 543 (1977) (finding federal preemption where a state law would prevent "the accomplishment and execution of the full purposes and objectives of Congress").

FDA has issued three policy statements all concluding that there is "no basis for concluding that bioengineered foods differ from other foods in any meaningful or uniform way."[3] Consequently, "FDA is therefore reaffirming its decision to not require special labeling of all bioengineered foods." *Id.*, at 6. As such, the use of GMOs is not "material information within the meaning of 21 U.S.C. § 321(n) and would not usually be required to be disclosed in the labeling for the food."[4] USDA agrees. Products developed through biotechnological techniques are "no different from those products resulting from research using conventional techniques."[5]

---

[3] FDA, *Guidance for Industry: Voluntary Labeling Indicating Whether Foods Have or Have Not Been Developed Using Bioengineering* (Draft Guidance), at 2 (Jan. 2001), *available at* http://www.fda.gov/OHRMS/DOCKETS/
98fr/001598gd.pdf; *see also* Statement of Policy: Foods Derived from New Plant Varieties, 57 Fed. Reg. 22,984 (May 29, 1992) and Food Labeling; Foods Derived From New Plant Varieties, 58 Fed. Reg. 25,837 (Apr. 28, 1993).

[4] Statement of Policy, 57 Fed. Reg. at 22,991. Bioengineered foods require special labeling *only* in the limited cases where "food derived from a new plant variety differs from its traditional counterpart such that the common or usual name no longer applies to the new food." *Id*. Mr. Krzykwa makes no such allegation; hence, FDA would not require special labeling.

[5] Office of Science and Technology Policy, *Coordinated Framework for Regulation of Biotechnology*, at 97 (June 26, 1986), http://usbiotechreg.epa.gov/usbiotechreg/.

Mr. Krzykwa seeks to impose requirements that are directly contrary to those agencies' positions. By challenging Campbell's "natural" labeling, Plaintiff seeks to create a distinction between corn derived from traditional breeding and corn derived from bioengineering. But as just noted, both FDA and USDA have made clear that no material distinction exists.[6]

FDA and USDA each have "natural" policies that are also consistent with one another. FDA states that a "natural" claim may be used if nothing artificial or synthetic is in the food that would not normally be expected in the food. 58 Fed. Reg. 2302, 2407 (Jan. 6, 1993). Similarly, USDA allows "natural" claims on labeling for products containing meat and poultry if (i) the product does not contain any artificial flavor, color, or chemical preservative, or any other artificial or synthetic ingredient, and (ii) the product and its ingredients are not more than minimally processed.[7] Neither policy references GMOs as prohibited in "natural" products. Plaintiff claims that "[g]enetic engineering is different from natural/conventional plant breeding and poses distinct risks" (SAC ¶ 31), but simply citing an anti-GMO article is not enough to disturb federal agencies' contrary conclusions based on scientific research and expertise.

A court recently confronted a similar issue in *Hairston v. South Beach Beverage Co., Inc.*, No. 12-1429, 2012 U.S. Dist. LEXIS 74279 (C.D. Cal. May 18, 2012). There, the plaintiff challenged the "all natural" label on Lifewater beverages as misleading because the products allegedly contained synthetic vitamins, and the common vitamin names concealed this fact. The court held that FDA regulations governing the naming of vitamins preempted the claim. The

---

[6] Furthermore, FDA has stated that "terms that describe an ingredient of a multi-ingredient food as bioengineered should not be used in the ingredient list of the multi-ingredient food." *Draft Guidance*, at 10. In fact, it has gone as far as to conclude that "a label statement that expresses or implies that a food is superior … because it is not bioengineered would be misleading." *Id.*, at 13. Thus, Campbell is required to list ingredients without reference to any possible bioengineering.

[7] USDA's *Food Standards and Labeling Policy Book*, "Natural Claims."

11

claim could not be salvaged by insisting the "all natural" statement was the true grievance because that argument "would effectively allow Plaintiff to avoid preemption of those claims, and would undermine the purpose of the federal labeling standards." *Id.*, at *9-10. Here, Mr. Krzykwa similarly attempts to require different labeling standards for foods containing GMOs, and cannot avoid preemption by claiming that he only challenges the "natural" statement. The law is clear that FDA and USDA both prohibit Plaintiff's requested distinction between traditionally engineered and bioengineered foods.

Third, there is the purpose behind the statute. Congress enacted the NLEA to require uniform food labeling. *See Turek v. Gen. Mills, Inc.*, 662 F.3d 423 (7th Cir. 2011). As the Seventh Circuit said, "[i]t is easy to see why Congress would not want to allow states to impose disclosure requirements of their own on packaged food products, most of which are sold nationwide. Manufacturers might have to print 50 different labels, driving consumers who buy food products in more than one state crazy." *Id.* at 426.

USDA has determined "100% natural" is not false or misleading when describing allegedly genetically modified corn inside a can that incidentally happens to contain chicken. By what logic, then, does Mr. Krzykwa suppose that it can be misleading when describing GMO corn inside a can that doesn't contain chicken?

Nor should the regulator matter. These are sister agencies. It would make no sense to find that claims related to chicken soup varieties within Campbell Soup's 100% Natural Soup line are preempted because the label is regulated by USDA, while holding the identical claims arising from non-chicken varieties within the same line of Campbell Soups, all of which are

12

found side-by-side on grocery store shelves, are not preempted.[8]

<u>Fourth</u>, it does not follow that just because FDA has not *pre*-approved these vegetable-based soups' labels that Mr. Krzykwa is free to inflict his mandate. Plaintiff claims that the violations he alleges mirror federal law, relying on the FDCA's broad provision that "A food shall be deemed to be misbranded—False or misleading label If its labeling is false or misleading in any particular." (SAC, ¶ 23 (citing 21 U.S.C. § 343).) But he cannot simply cite FDA's misbranding catch-all provision as license to ignore USDA's rejection of his claims or as evidence that FDA agrees with him. The Supreme Court has long recognized that federal law preempts state law claims that depend on speculation about what a federal agency would have done in hypothetical regulatory proceedings. *See, e.g., Arkansas La. Gas Co. v. Hall*, 453 U.S. 571, 578-79 (1981); *Nantahala Power & Light Co. v. Thornburg*, 476 U.S. 953, 963-64 (1986)[9].

The Court should find all of Plaintiff's claims preempted based on USDA's approval of the labeling and ingredient he challenges.

---

[8] The SAC includes a single sentence about an additional remedy: "Plaintiff also seeks to mandate disclosure of bio-engineered or GM corn on its advertising not related to the labeling or packaging, such as print and online advertisements." (FAC, ¶ 50.) Yet Plaintiff nowhere describes what he means by advertising "not related to the labeling or packaging." The SAC never mentions specific print advertisements or their content, and while it quotes Campbell's website, Plaintiff never alleges to have read or relied on specific website statements. Furthermore, these website statements are extensions of the product labeling, as the web address appears on the soup labels. And, once again, the purposes of uniformity would be destroyed by allowing Plaintiff to mandate disclosures even though USDA and FDA have concluded those disclosures are *not* mandatory.

[9] In his opposition filed in the *Barnes* case in California, Plaintiff cited to *Briseno v. ConAgra Foods, Inc.*, No. CV 11-05379 MMM (AGRx), 2011 U.S. Dist. LEXIS 154750 (C.D. Cal. Nov. 23, 2011), where the court found that "all natural" claims were not expressly preempted by FDA's GMO policy. *Id.*, at *21-22. *Briseno* is inapposite because, unlike here, the court in *Briseno* was not considering labeling statements and ingredients affirmatively approved by USDA.

13

### D.     Plaintiff's Claims Should be Dismissed Under the Primary Jurisdiction Doctrine

The primary jurisdiction doctrine applies where, as here, a plaintiff's claims implicate a federal agency's expertise for a regulated product. *United States v. W. Pac. R.R. Co.*, 352 U.S. 59, 64 (1956) (primary jurisdiction doctrine applies "whenever enforcement of [a] claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body"). The doctrine is based on the need for agency expertise and a uniform interpretation of a statute or regulation. *Sierra Club v. Van Antwerp*, 362 F. App'x 100, 104 (11th Cir. 2010). Agency expertise and uniformity are essential to the food labeling regulatory scheme adopted by Congress. Given that USDA has determined that the labels on the two 100% Natural Soups with chicken are truthful and not misleading and that USDA, and FDA are charged with ensuring products distributed into commerce are not misbranded under identical criteria, and that both agencies have made clear the need for uniformity in interpretation of food-related statutes and regulations, FDA should be given deference to decide on the three 100% Natural Soups that are the subject of the SAC.

Courts have recognized the applicability of this principle of primary jurisdiction in food labeling cases. The Ninth Circuit rejected a plaintiff's attempt to sue over the name of a juice product, stating that "[w]here FDA has not concluded that particular conduct violates the FDCA, we have even held that a Lanham Act claim may not be pursued if the claim would require litigating whether that conduct violates the FDCA." *Pom Wonderful LLC v. Coca-Cola Co.*, 679 F.3d 1170, 1176 (9th Cir. 2012).

Citing *Pom Wonderful*, two district courts have dismissed claims similar to those asserted

14

here.[10]  In *Astiana v. Hain Celestial Group, Inc.*, -- F. Supp. 2d --, No. C 11-6342 PJH, 2012 U.S. Dist. LEXIS 165368, at *3-4 (N.D. Cal. Nov. 19, 2012), the court ruled that plaintiffs could not challenge "all natural" claims arising from a cosmetic product, citing *Pom Wonderful* and finding it applicable: "courts do regularly decide whether conduct is false or misleading. But courts do not decide such issues when such a decision would undermine, through private litigation, the FDA's considered judgments."

Likewise, in *All One God Faith, Inc. v. Hain Celestial Grp., Inc.*, No. C 09-3517 SI, 2012 U.S. Dist. LEXIS 111553, at *33 (N.D. Cal. Aug. 8, 2012), a different federal judge cited *Pom Wonderful* and dismissed a claim challenging "organic" statements, finding plaintiff's allegations "would inevitably require the Court to interpret and apply federal organic standards, potentially create a conflict with those standards, and would intrude upon and undermine the USDA's authority to determine how organic products should be produced, handled, processed and labeled."

The instant case presents an even stronger basis for finding that Mr. Krzykwa cannot challenge the "all natural" claims on the 100% Natural Soups that are the subject of the SAC under the doctrine of primary jurisdiction.  In this case, unlike *Pom Wonderful* and the two *Hain Celestial* cases, there is the important additional fact.  Specifically, the USDA already found that two labels under its jurisdiction in the 100% Natural Soup line of products that were the subject of the OC and FAC are truthful and not misleading.

In addition, the court's decision in *Astiana* underscores that FDA's "natural" policy must be read in light of FDA's GMO policy and comprehensive oversight of bioengineering.  In that

---

[10] Courts have different names for this principle of agency deference: primary jurisdiction, deference, implied preemption, for example.  Regardless of the title, the concept is the same.  These are matters committed to agency discretion.

case, the court declined to undercut FDA's expert judgments as to the requirements of an "all natural" cosmetic. *Astiana*, 2012 U.S. Dist. LEXIS 165368, at *8-9. The instant case is even more compelling, as USDA, with similar policies and expertise regarding GMOs, approved the labels of the chicken soups in the 100% Natural line, and labeling decisions regarding biotechnology require advanced scientific expertise that both USDA and FDA possess.

Mr. Krzykwa seeks to displace USDA and FDA and decide for himself whether Campbell's labels live up to his standards. That would be wrong. The "natural" claim in this case has already been the subject of USDA review and approval. And as described above, USDA and FDA are in agreement regarding GMOs and "natural" statements. Both agencies have issued consistent policies on those subjects and both are charged with ensuring that food products are not "misbranded" under identical criteria. In this case, USDA has already determined that the products that bear its mark of inspection within Campbell's 100% Natural Soup line are truthful and not misleading. Given that both agencies operate under the same Congressional directive to ensure products are not misbranded and both agencies have the same definition of "misbranding," it follows that the doctrine of primary jurisdiction should be applied here with respect to the same line of products that do not bear the mark of inspection. Any further issues that the Court believes need resolution should be left to FDA to decide, as it has jurisdiction over the three products at issue.

In sum, all of Plaintiff's claims are barred. They are preempted by the FMIA and PPIA and should be dismissed under the primary jurisdiction doctrine.

### D.  Plaintiff's FDUPTA and Unjust Enrichment Claims Fail

#### 1.  Plaintiff's Claim Falls Within FDUTPA's Safe Harbor Provision.

By its express terms, FDUTPA does not apply to any acts or practices that are required or specifically permitted by federal or state law. Fla. Stat. § 501.212(1); *Prohias v. AstraZeneca Pharm., L.P.*, 958 So. 2d 1054, 1056 (Fla. 3d DCA 2007); *Eirman v. Olde Disc. Corp.*, 697 So. 2d 865, 866 (Fla. 4th DCA 1997) (conduct alleged to be violation of FDUTPA was authorized by rules of United States Securities & Exchange Commission, thus FDUTPA is inapplicable pursuant to section 501.212(1), Florida Statutes). As described above, USDA expressly approved the "natural" label and corn in Campbell's chicken soups. That conclusion necessarily applies to the same "natural" label and same corn in Campbell's vegetable soups. Accordingly, Plaintiff's claim for a FDUTPA violation fails because it falls within FDUTPA's safe harbor provision rendering FDUPTA inapplicable. Count I should be dismissed with prejudice.

#### 2.  Plaintiff's Claim for Unjust Enrichment is Insufficient.

Plaintiff's unjust enrichment claim is insufficient for two reasons. First, the claim is predicated on the exact same allegations as his FDUPTA claim. However, as described above, Plaintiff's claims are preempted. Plaintiff cannot make an end-run around his preemption problems by seeking to plead an unjust enrichment claim. *See, e.g., Eventus Mktg. Inc. v. Sunset Transp. Co.*, 722 F. Supp. 2d 1311, 1312 (S.D. Fla. 2010) (granting defendant's motion to dismiss and finding that plaintiff's claims for unjust enrichment were preempted); *Baptista v. J.P. Morgan Chase Bank, N.A.*, No. 6:10–cv–139–Orl–22DAB, 2010 WL 2342436, at *7 (M.D. Fla. June 4, 2010) (same). Furthermore, pleading in the alternative does not salvage his claims. (SAC, at ¶ 95); *See Weaver v. Mateer & Harbert, P.A.*, No. 5:09-cv-514-Oc-34TBS, 2012 WL 3065362, at *11 (M.D. Fla. July 27, 2012) ("although [p]laintiff may be entitled to plead in the

alternative, that is not what [p]laintiff has done in this case. Plaintiff's unjust enrichment claim relies on the factual predicate common to all its claims.").

Second, under Florida law, a plaintiff may not recover under a theory of unjust enrichment if the alleged "unjustness" arose because of an alleged independent tort. *State of Florida v. Tenet*, 420 F. Supp. 2d 1288, 1310 (S.D. Fla. 2005). Additionally, an equitable doctrine claim fails where there is an adequate remedy at law. *See Prohias v. Pfizer*, 490 F. Supp. 2d 1228, 1236 (S.D. Fla. 2007) (dismissing plaintiff's unjust enrichment claim premised on misrepresentations of product's qualities) (citing *Am. Honda Motor Co. v. Motorcycle Info. Network, Inc.*, 390 F. Supp. 2d 1170, 1178 (M.D. Fla. 2005)). Here, Plaintiff alleges an independent tort, and if it were not preempted, there would be an adequate remedy at law. Count II should be dismissed with prejudice.

## V. CONCLUSION

For all the foregoing reasons, Campbell Soup Company respectfully requests that the Court dismiss the Second Amended Complaint with prejudice.

*Respectfully Submitted*,

| | |
|---|---|
| By: /s/ Frank A. Zacherl<br>FRANK A. ZACHERL<br>Florida Bar No.: 868094<br>fzacherl@shutts.com<br>STEPHEN B. GILLMAN<br>Florida Bar No. 196734<br>RACHEL H. LEBLANC<br>Florida Bar No.: 0021815<br>rleblanc@shutts.com | William L. Stern, (Admitted *Pro Hac Vice*)<br>Lisa Ann Wongchenko, (Admitted *Pro Hac Vice*)<br>Morrison & Foerster, LLP<br>425 Market Street<br>San Francisco, CA 94105-2482<br>P (415) 268-7000<br>F (415) 268-7522<br>wstern@mofo.com<br>lwongchenko@mofo.com<br>**Counsel for Campbell Soup Company** |

## CERTIFICATE OF SERVICE

I hereby certify that on March 28, 2013, a true and correct copy of the foregoing was filed and served via CM/ECF electronic transmission on all counsel or *pro se* parties of record set forth in the Service List below.

By: /s/ Frank A. Zacherl_____
FRANK A. ZACHERL

## SERVICE LIST

| **Angela Valentina Arango-Chaffin, Esq.**<br>angela@chaffinlawfirm.com<br>Florida Bar No. 87919<br>THE FLORIDA CHAFFIN LAW FIRM<br>1455 Ocean Drive, Suite 811<br>Miami, Florida 33139<br>Tel (305) 818-2515<br>Fax (305) 952-5972<br>*Counsel for Plaintiff* | **Benjamin M. Lopatin, Esq.**<br>*lopatin@hwrlawoffice.com*<br>California Bar No. 281730<br>THE LAW OFFICE OF HOWARD W. RUBINSTEIN, P.A.<br>One Embarcadero Center, Suite 500<br>San Francisco, California 94111<br>Tel (800) 436-6437<br>Fax (415) 692-6607<br>*Counsel for Plaintiff* |
|---|---|