UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 12-62058-CIV-DIMITROULEAS

MARK KRZYKWA, as an individual, and
on behalf of all others similarly situated,

    Plaintiff,

vs.

CAMPBELL SOUP CO. a New Jersey corporation,

    Defendant.
_____/

## ORDER DENYING DEFENDANT'S MOTION TO DISMISS

THIS CAUSE is before the Court upon Defendant Campbell Soup Co.'s ("Defendant" or "Campbell")'s Motion to Dismiss Second Amended Complaint [DE 29]. The Court has carefully considered the Motion, Plaintiff Mark Krzykwa ("Plaintiff" or "Krzykwa")'s Response [DE 32], Defendant's Reply [DE 34], arguments by counsel at the May 10, 2013 hearing, and is otherwise fully advised in the premises.

### I.  BACKGROUND

This action relates to the "all natural" labeling of food products containing genetically modified ingredients, here, vegetable soups containing genetically modified corn. Plaintiff alleges that this Court has jurisdiction over the subject matter presented by this Second Amended Class Action Complaint because it is a class action arising under the Class Action Fairness Act of 2005 ("CAFA"), Pub. L. No. 109-2, 119 Stat. 4 (2005), which explicitly provides for the original

jurisdiction of the Federal Courts of any class action in which any member of the plaintiff class is a citizen of a state different from any Defendant, and in which the matter in controversy exceeds in the aggregate the sum of $5,000,000.00, exclusive of interest and costs. ¶¶ 8, 9.

According to the factual allegations of the Second Amended Complaint, Defendants have represented that its 100% Natural Soups line of soups are "All Natural," when in fact, they are not, because they contain genetically modified corn, which is a bio-engineered food, most commonly known as a genetically modified organism ("GMOs"). [DE 27] at ¶ 1.  Plaintiff alleges that although Defendants market the products as "All Natural," these claims are false because the soups contain GMOs, plants whose genetic makeup has been altered through biotechnology to exhibit characteristics that would not otherwise occur in nature.  Plaintiff alleges that genetic engineering is different from natural/conventional plant breeding and poses distinct risks. ¶ 4.  Specifically, the genetic engineering and associated tissue culture processes are highly mutagenic, leading to unpredictable changes in the DNA and proteins of the resulting GMO that can lead to unexpected toxic or allergenic effects. ¶ 5.  Plaintiff alleges that recent studies suggest that GMOs may in fact be harmful to a consumer's health. ¶ 33.

In the Second Amended Complaint, Plaintiff alleges that he purchased Campbell's 100% Natural Light Southwestern-Style Vegetable Soup, 100% Natural Tomato Garden Soup, and 100% Natural Vegetable Medley Soup, all containing GMO corn, from a Publix supermarket in Fort Lauderdale, Florida, during September of 2012. ¶ 38.  Plaintiff claims that he relied upon the advertising containing the misrepresentations and omissions which he complains of, which was prepared and approved by Defendant and its agents and disseminated through its labeling of the products. Plaintiff believed the representation on the label that this soup was "100% Natural" and

thus the soup did not contain, nor was it made with, any genetically modified ingredients. ¶ 41. If Plaintiff had known the soup cans he purchased contained GMOs and thus was not "100% Natural," he states that would not have purchased them. ¶ 41.  Plaintiff also alleges that he paid a premium price for the "100% Natural" products, as they cost approximately twice as much as other, similar Campbell's soup flavors that are not labeled as "all natural" or "100% natural." ¶ 45.

Plaintiff filed this case as a class action for injunctive relief, restitution, disgorgement, and damages against Campbell.  The Class which Plaintiff seeks to represent is:

> All Florida persons who have purchased, for personal use, 100% Natural Light Southwestern-Style Vegetable Soup, 100% Natural Tomato Garden Soup, and/or 100% Natural Vegetable Medley Soup flavors containing corn, since September 2009.

¶ 52.

Count I of the Second Amended Complaint is for false and misleading advertising in violation the Florida Deceptive and Unfair Trade Practices Act, FLA. STAT. §§ 501.201, et seq. ("FDUTPA").  Count II is for unjust enrichment.  Plaintiff specifically alleges that his state law claims mirror the labeling, packaging, and advertising requirements mandated by federal regulations and laws.  See ¶ 6 and p. 12 n. 9.  Plaintiff seeks an order prohibiting Campbell from including genetically modified corn in its "100% Natural Soup" products or, in the alternative, from representing the Products are "100% Natural" when they are not, because bio-engineered corn is not 100% Natural. ¶ 7.

## II.  DISCUSSION

**A. Standard of Review**

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is

a motion attacking the legal sufficiency of a complaint.  When considering a Rule 12(b)(6) motion to dismiss, the court accepts as true all factual allegations in the complaint and draws inferences from theses allegations in the light most favorable to the plaintiff.  See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  Under the Federal Rules of Civil Procedure Rule 12(b)(6), a motion to dismiss will be awarded if the plaintiff fails to state a claim in which relief can be granted.  According to Rule 8(a)(2) of the Federal Rules of Civil Procedure, a claimant must only state "a short and plain statement of the claim showing that the pleader is entitled to relief."  The Supreme Court in Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007), set forth a pleading standard in which the plaintiff must plead "enough facts to state a claim to relief that is *plausible* on its face." (emphasis added).  In order to survive a 12(b)(6) motion, the plaintiff must plead with enough information to show that his claim may entitle him to relief.  "A court considering a motion to dismiss may begin by identifying allegations that, because they are mere conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the complaint's framework they must be supported by factual allegations." Iqbal, 556 U.S. at 664.

**B.      Defendant's Motion to Dismiss**

Defendant moves to dismiss Plaintiff's Second Amended Complaint [DE 27] on several grounds.  First, Defendant argues that the claims are preempted.  Second, Defendant argues that the case should be dismissed under the primary jurisdiction doctrine.  Third, Defendant argues that, because of preemption and compliance with federal law, Plaintiff's FDUPTA allegations fall under the safe harbor provision of Fla. Stat. § 501.212(1).  Finally, Defendant argues that Plaintiff's unjust enrichment claim fails for that reason and also because he has an adequate remedy at law.  The Court shall address each of these arguments in turn.

*I.     Preemption*

Defendant argues that Plaintiff's claims are preempted because the Department of Agriculture ("USDA") preapproved Campbell's "100% natural" statement on two cans of soup from the Campbell's 100% Natural Soups line that also have a 100% natural" label and contain the same GMO corn ingredients. Thus, it argues that the preemptive effect of the USDA mark of inspection necessarily extends to these products.  In support, Defendant cites Meaunrit v. ConAgra Foods Inc., No. C 09-02220 CRB, 2010 WL 2867393, at *5, *7 (N.D. Cal. July 20, 2010) (dismissing plaintiff's state law claims alleging that ConAgra's frozen chicken pot pies were mislabeled because the claims were preempted by the FMIA and PPIA) ("[b]ecause the [USDA] pre-approval process includes a determination of whether the labeling is false and misleading, and the gravamen of Plaintiff's attack on the label concerns whether [the heating instructions] are accurate, the plaintiff's state causes of action are preempted by federal law."). Defendant also relies on Hairston v. S. Beach Beverage Co., No. CV 12–1429–JFW, 2012 WL 1893818, at *6 (C.D. Cal. May 18, 2012). There, the plaintiff challenged the "all natural" label on Lifewater beverages as misleading because the products allegedly contained synthetic vitamins, and the common vitamin names concealed this fact. The court granted the defendant's motion to dismiss, holding that FDA regulations governing the naming of vitamins preempted the claim.

Defendant argues that even though the FDA rather than the USDA regulates the vegetable (not containing chicken or beef) soups at issue under the Second Amended Complaint, the FDA and USDA have developed similar policies that govern the labeling of food products with "natural" claims, and both have determined there is nothing material about bioengineered foods

that differs from other foods.  Defendant claims that the facts presented in this case create an issue of first impression, as the USDA approved labels of Campbell soups containing poultry meat that have the same GMO corn and are in the same "line of soup products" as the vegetable soups at issue in this case.

In response, Plaintiff argues that Defendant's preemption argument fails since the soups at issue are not regulated nor preempted by the USDA, FMIA, or PPIA because they do not contain any poultry.  Plaintiff contends that Defendant's argument that USDA approval of chicken soups that Defendant admits are no longer claimed in this lawsuit, amounts to FDA approval of the 100% Natural label on soup containing genetically modified corn, is completely amiss.

Upon consideration, the Court is not impressed by this "first impression" scenario.  There is nothing special about being in the same product line from a preemption perspective.  From a purely logical standpoint (as advocated by counsel at the hearing), if the Court adopted Campbell's position, the Court finds that there would be no authentic reason to not also necessarily take the position that because the USDA approved two Campbell poultry meat soups not at issue in this case that no claims can be made in any case against any defendant that it is misleading to using label a food product containing GMO corn as "100% Natural."[1]

Here, Plaintiff's state consumer protection law claims are not preempted by federal regulations.  See, e.g., Jones v ConAgra Foods, Inc., 2012 WL 6569393, *6 (N.D. Cal. Dec. 17,

---

[1] Additionally, it does not necessarily flow that the USDA's approval of the label in the chicken soups in is binding on every other federal agency that comes in contact with genetically modified corn.  We do not even know whether, when reviewing the label for whether it was "misleading," the USDA even knew that the soup contained GMO corn, particularly as there is nothing on the soup label to so indicate.

2012) (declining to apply preemption to "100% natural" claims).

II.     *Primary Jurisdiction*

Defendant argues that the case should be dismissed under the primary jurisdiction doctrine, which applies where a plaintiff's claims implicate a federal agency's expertise for a regulated product. United States v. W. Pac. R.R. Co., 352 U.S. 59, 64 (1956) (primary jurisdiction doctrine applies "whenever enforcement of [a] claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body"). It claims that the FDA has said no "special labeling" is required when bioengineered ingredients are used in foods. Defendant cites Pom Wonderful LLC v. Coca-Cola Co., 679 F.3d 1170, 1176 (9th Cir. 2012). In that case, the Ninth Circuit rejected a plaintiff's attempt to sue over the name of a juice product, stating that "[w]here FDA has not concluded that particular conduct violates the FDCA, we have even held that a Lanham Act claim may not be pursued if the claim would require litigating whether that conduct violates the FDCA[2]." See also All One God Faith, Inc. v. Hain Celestial Grp., Inc., No. C 09-3517 SI, 2012 U.S. Dist. LEXIS 111553, at *33 (N.D. Cal. Aug. 8, 2012) (dismissing a claim challenging "organic" statements, finding plaintiff's allegations "would inevitably require the Court to interpret and apply federal organic standards, potentially create a conflict with those standards, and would intrude upon and undermine the USDA's authority to determine how organic products should be produced, handled, processed and labeled.").

Plaintiff contends that the fact that the FDA does not require disclosure of bioengineered ingredients does not necessarily close the door on whether a particular labeling or advertising

---

[2] the Food, Drug & Cosmetic Act ("FDCA")

7

may mislead and deceive consumers in violation of consumer protection laws.  Moreover, Defendant's arguments that the claims should be dismissed under the primary jurisdiction doctrine is also misplaced because the FDA has repeatedly declined to adopt formal rule-making that would define the word "natural." The Court agrees.  Courts have declined to dismiss false advertising claims premised on food companies' "natural" claims because the FDA simply does not regulate those claims. See, e.g., Jones v ConAgra Foods, Inc., 2012 WL 6569393, *6 (N.D. Cal. Dec. 17, 2012)  (declining to apply primary jurisdiction doctrine to "100% natural" claims); Janney v. General Mills, Inc., Case No.: C 12-3919-PJH, *10 (N.D. Ca. May 10, 2013) (declining to dismiss under primary jurisdiction doctrine) ("Nevertheless, in repeatedly declining to promulgate regulations governing the use of "natural" as it applies to food products, the FDA has signaled a relative lack of interest in devoting its limited resources to what it evidently considers a minor issue, or in establishing some "uniformity in administration" with regard to the use of "natural" in food labels."). See also [DE 32-1] (Letter from Michael M. Landa, Acting Director, Center for Food Safety and Applied Nutrition to Judge Jerome B. Simandle dated September 16, 2010).

III.     *Safe Harbor Provision of Fla. Stat. § 501.212(1)*

Defendant argues that, because of preemption and compliance with federal law, Plaintiff's FDUPTA allegations fall under the safe harbor provision of Fla. Stat. § 501.212(1). This statute states as follows:

> 501.212. Application
> This part does not apply to:
> (1) An act or practice required or specifically permitted by federal or state law.

Fla. Stat. § 501.212(1).  As set forth above, Plaintiff's claims are not preempted.   Accordingly,

8

Defendant's argument that Plaintiff's clams fall under FDUPTA's safe harbor provision correspondingly fails.

IV.     *Unjust Enrichment*

Defendant argues that the unjust enrichment claim fails on the ground set forth in Section III, supra, and also because he has an adequate remedy at law. Upon review, the Court finds that Plaintiff has pleaded his unjust enrichment claim in the alternative to his FDUTPA claim.

Further, regarding sufficient pleading of this cause of action, "[a] claim for unjust enrichment has three elements: (1) the plaintiff has conferred a benefit on the defendant; (2) the defendant voluntarily accepted and retained that benefit; and (3) the circumstances are such that it would be inequitable for the defendants to retain it without paying the value thereof." Virgilio v. Ryland Group, Inc., 680 F.3d 1329 (11th Cir. Fla. 2012) (citing Fla. Power Corp. v. City of Winter Park, 887 So. 2d 1237, 1241 n. 4 (Fla. 2004)). Here, each of the elements have been adequately pled: (1) Plaintiff conferred a benefit on the defendant by paying the purchase price, see [DE 27] at ¶ 88); (2) Campbell accepted and retained that benefit, ¶ 89; and (3) it would be inequitable for Campbell to retain the purchase price, ¶¶ 90–91.

### III.    CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** that Defendant's Motion to Dismiss Second Amended Complaint [DE 29] is hereby **DENIED**.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, this 24th day of May, 2013.

WILLIAM P. DIMITROULEAS
United States District Judge

Copies furnished to:
Counsel of Record